# United States Court of Appeals
# for the Fifth Circuit

———————

No. 25-20138
Summary Calendar

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2025

Lyle W. Cayce
Clerk

OXEA CORPORATION, *doing business as* OQ CHEMICALS
CORPORATION,

*Plaintiff—Appellant*,

*versus*

CERTAIN UNDERWRITERS AT LLOYDS, LONDON SUBSCRIBING
TO POLICY NO. ENVP0000060-20,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-1125

———————————————————————

Before KING, HAYNES, and HO, *Circuit Judges*.

PER CURIAM:[*]

Plaintiff-Appellant OXEA Corporation, doing business as OQ
Chemicals Corporation ("OQ"), appeals the district court's grant of
Defendant-Appellee Certain Underwriters at Lloyds, London Subscribing to
Policy No. ENVP0000060-20's ("Underwriters") motion for summary

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

judgment. Below, the parties "agree[d]" that the district court's "jurisdiction [was] proper under 28 USC § 1332," and OQ stated in its briefing here that the district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(2), which applies in lawsuits between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

However, after the parties submitted their briefing to us, it became evident upon further review that the diversity jurisdiction in the record is somewhat confusing. We may, and here do, assess subject-matter jurisdiction sua sponte, given "subject-matter delineations must be policed by the courts on their own initiative even at the highest level." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citations omitted); *see also De Jongh v. State Farm Lloyds*, 555 F. App'x 435, 436–37 (5th Cir. 2014) (per curiam) (unpublished) (quoting *Ruhrgas AG*, 526 U.S. at 583, for same).[1] A summary of the pertinent portions of the record demonstrates our concerns.

In February 2023, OQ filed its original petition and request for disclosure in the 269th Judicial District Court of Harris County, Texas. OQ's original petition named six defendants, including, most relevantly, "Euclid Enviant LLC" ("Euclid"). OQ averred that both it and Euclid were limited liability companies with a "principal place of business" (in the case of OQ) or "citizenship" (in the case of Euclid) in Texas. In its original petition, OQ argued that Euclid and the other defendants failed to defend and help settle a separate lawsuit brought against OQ in Texas state court, and that this conduct gave rise to claims for breach of Environmental Site Pollution Insurance Policy No. ENVP0000060-20 ("Policy") and violation of the Texas Prompt Payment of Claims Act. OQ averred that Euclid was

---

[1] Although *De Jongh* "is not controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (citing 5TH CIR. R. 47.5.4).

"an affiliated entity" under the Policy, and that it and another entity acted as agents or "'Correspondent[s]' in issuing the . . . Policy to OQ." The record indicates that Euclid was served a copy of OQ's original petition, and a copy of the state court docket, evidently captured in March 2023, lists Euclid among the "Active Parties" to the state court litigation.

In March 2023, Underwriters removed this case to the district court solely based on diversity jurisdiction. Per this notice of removal, "Defendants Certain Underwriters at Lloyd's, . . . [were] improperly denominated as Euclid Enviant LLC," though besides this Underwriters did not mention Euclid. Underwriters asserted that: (1) OQ is a corporation organized in Delaware with a principal place of business in Texas, and thus is a citizen of Delaware and Texas; (2) OQ "improperly denominated" most of the defendant "subscribing Syndicate participants," but, regardless, all of these entities were citizens of England; (3) there was thus "complete diversity between the properly joined parties pursuant to 28 U.S.C. § 1332(a)"; and (4) the amount in controversy exceeded $75,000 excluding interest and costs. In its certificate of interested persons, OQ acknowledged that "Defendants contend [Euclid] should have been identified as Certain Underwriters at Lloyd's, London Subscribing to Policy No. ENVP0000060-20," though it still identified Euclid as an entity with financial interests in the litigation.

In May 2023, OQ and Underwriters filed a document entitled "Stipulation to Substitute Real Parties in Interest and Dismiss without Prejudice Enviant." In addition to substituting five parties into the action for those identified in OQ's original petition "to correct the names of the parties' and/or reflect the real parties in interest," OQ and Underwriters

agreed that, under Federal Rule of Civil Procedure 41(a)(1)(A)(ii),[2] Euclid was "dismissed from this action without prejudice, with no award of costs or fees."

However, despite the parties' stipulation of dismissal, OQ continued to list Euclid as one of the "Defendants" in this litigation in numerous filings submitted *after* the stipulation, including oppositions to several of Underwriters' motions, OQ's witness list, and proposed jury instructions.[3] Additionally, a proposed joint pretrial order, signed by counsel for *both* OQ and Underwriters, listed Euclid as a "Defendant[.]" Separately, OQ moved for leave to amend its complaint, and, while the district court denied this motion, we note that in its proposed amended complaint OQ listed Euclid as a defendant and reiterated that Euclid was "a limited liability company with citizenship in the state of Texas." The record does not indicate that the district court substantively addressed the tension between these filings.[4]

In sum, the record is confusing because, on one hand, it indicates that Euclid, an allegedly non-diverse citizen of Texas, was voluntarily dismissed after Underwriters removed this case to the district court. On the other hand, it was left as a defendant in much of the record. OQ's post-stipulation filings

_____

[2] Federal Rule of Civil Procedure 41(a)(1)(A)(ii) provides that, subject to other rules and applicable statutes, "the plaintiff may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared."

[3] Underwriters, for their part, reiterated in multiple post-stipulation filings that they had been "improperly denominated as Euclid."

[4] The record demonstrates that the district court issued orders following the parties' stipulation that listed the individual defendants and did not mention Euclid as one of the defendants. However, besides acknowledging the diversity jurisdiction basis for Underwriters' removal, it appears the district court did not substantively address the abovementioned discrepancies, or the basis for its diversity jurisdiction, in these orders or its grant of Underwriters' motion for summary judgment.

are rife with mentions of Euclid as a defendant. The district court's docket, meanwhile, does not list Euclid as "dismissed" or "terminated."

In these circumstances, we believe a limited remand is proper to allow the parties and the district court to address these issues, clarify the parties' citizenship statuses,[5] and, as necessary, supplement the record. *See* 28 U.S.C. § 1653; *see also J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (per curiam), *subsequent opinion*, No. 23-20292, 2025 WL 26198 (5th Cir. Jan. 3, 2025) (per curiam) (unpublished), *petition for cert. filed* (U.S. June 2, 2025) (No. 25-310). "Where jurisdiction is clear from the record," we have "allowed direct amendments to the pleadings without a remand." *Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1228 (5th Cir. 1989) (per curiam) (citations omitted). However, "[w]here, as here, jurisdiction is not clear from the record, but there is some reason to believe that jurisdiction exists, [we] may remand the case to the district court for amendment of the allegations and for the record to be supplemented." *Id.* (citations omitted); *see also J.A.*

---

[5] As noted above, OQ originally alleged that both it and Euclid are limited liability companies, and that Euclid is a citizen of Texas, though it did not describe OQ's or Euclid's membership. OQ also originally alleged that the remaining defendants were "foreign compan[ies]" incorporated in England and Wales. In its notice of removal, Underwriters asserted that OQ is a corporation organized in Delaware with a principal place of business in Texas, and thus is a citizen of Delaware and Texas. While Underwriters also asserted that the remaining, non-Euclid "Syndicate participant[]" defendants were citizens of England, it is unclear whether Underwriters fully clarified the citizenship of all of these defendants. For instance, Underwriters averred that "[t]he sole underwriting member" of one defendant was a "U.K. corporate entity with citizenship in the U.K.," but also that this entity was "a limited company." In their joint stipulation, the parties agreed to substitute all but one of the non-Euclid defendants and characterized these entities as "foreign compan[ies] incorporated in England and Wales." In this context, we leave to the able district court the task of clarifying the parties' citizenship for diversity purposes. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–80 (5th Cir. 2008) (considering the citizenship of a corporation, which was a citizen of its state of incorporation and the state where it has its principal place of business, and a limited liability company, the citizenship of which "is determined by the citizenship of all of its members").

No. 25-20138

*Masters Invs.*, 117 F.4th at 323–24. Such is appropriate here, where there are reasons to believe that diversity jurisdiction exists, but the record contains inconsistencies that raise jurisdiction-related questions. Accordingly, and with respect to the distinguished district court, we REMAND this case for further proceedings consistent with this opinion. We will retain jurisdiction over this case pending further appeal.